UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Brandon Potts,<br><br>             Plaintiff,<br><br>v.<br><br>The United States of America, *et al.*,<br><br>             Defendants. | Case No. 2:25-cv-09579-JFA-MGB<br><br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Brandon Potts ("Potts") brings this civil action alleging, *inter alia*, negligent medical care pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*[1] This matter is before the Court upon a Motion to Dismiss filed by Defendant NaphCare, Inc. ("NaphCare") (Dkt. No. 19); a Motion to Substitute filed by Defendant the United States of America (the "United States") (Dkt. No. 23); and a Motion to Dismiss filed by Defendants the United States, Olusegun Taiwo, and Timothy Young (collectively, "Federal Defendants") (Dkt. No. 24). For the reasons set forth herein, the undersigned recommends granting in part and denying in part NaphCare's Motion to Dismiss; granting the United States' Motion to Substitute, and granting the Federal Defendants' Motion to Dismiss.

**BACKGROUND**

This action stems from events that occurred while Plaintiff was incarcerated and in the custody of the Federal Bureau of Prisons ("BOP"), specifically at the federal correctional facilities in Edgefield County, South Carolina ("FCI Edgefield") and Atlanta, Georgia ("USP Atlanta").[2]

---

[1] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2), D.S.C., pretrial proceedings in this action have been referred to the assigned United States Magistrate Judge.
[2] As discussed *infra*, Plaintiff was granted compassionate release from federal custody on August 22, 2024, pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. No. 15 at 2.)

1

Defendant NaphCare is a corporation hired by the BOP as an independent contractor to provide healthcare services to BOP inmates, "which include physician and nursing services, pharmaceuticals, and administrative support." (Dkt. No. 15 at 2.) Plaintiff alleges that "NaphCare's contract with FCI Edgefield and USP Atlanta required that the [BOP] pay millions of dollars for NaphCare's services for calendar years 2022 and 2023. In return, NaphCare guaranteed that its services would comport with the standard of care." (*Id.*) Plaintiff alleges that during the events at issue, Defendant Timothy Young, M.D. ("Young") "was a physician who was providing healthcare services at FCI Edgefield" and Defendant Olusegun Taiwo, FNP-C ("Taiwo") "was an advanced nurse care provider who was providing healthcare services at FCI Edgefield." (*Id*. at 3.)

According to Plaintiff, "[n]o later than June of 2022, Plaintiff presented to the healthcare providers at FCI-Edgefield with complaints associated with two black lesions on his skin that had increased in size over the past year." (*Id*. at 4.) On August 9, 2022, Defendant Taiwo examined Plaintiff, "determined that Plaintiff needed to see an outside provider for a dermatology consultation," and set "a target date of that appointment . . . for September 2022," marking it "as routine priority."  (*Id.*) Plaintiff alleges that "Defendant NaphCare and its employees, agents and representatives were responsible for coordinating with FCI-Edgefield for timely scheduling specialized healthcare, including dermatology consultations to outside providers." (*Id.*) According to Plaintiff, Defendant NaphCare, the Federal Defendants, "John Doe, and Jane Doe failed to timely refer and/or schedule and/or arrange a dermatology consultation for Plaintiff, and he was note seen by an offsite dermatologist until on or about December 27, 2022." (*Id*. at 5.)

"At the December 27, 2022 appointment, a biopsy of the skin lesions was performed. Later that day, Plaintiff was transferred back to FCI Edgefield." (*Id.*) Plaintiff's "Clinical Encounter Note stated, 'Inmate returned from a dermatology appt. Biopsy obtained to rule out melanoma per

2

doctors note. Awaiting results. No further recommendation needed at this time.'" (*Id.*) Defendant Young reviewed and signed this Note "the following day." (*Id.*) Plaintiff alleges that the biopsy results "indicated that Plaintiff likely had skin cancer," and NaphCare "was in possession of those results." (*Id.*) "[O]n January 6, 2023, and January 18, 2023, the outside dermatologist wrote to the attention of the Defendants at FCI-Edgefield and stated that Plaintiff needs to be seen by a surgical oncologist 'ASAP' to check his lymph nodes and possibly begin chemotherapy treatment." (*Id.*) Plaintiff alleges that "NaphCare was also in possession of this correspondence." (*Id.*) According to Plaintiff, Defendant NaphCare, the Federal Defendants, "John Doe, and Jane Doe failed to inform Plaintiff of the results of his biopsy and the urgent recommendation of the dermatologist." (*Id.*)

In May 2023, while still unaware of his biopsy results, Plaintiff was transferred to USP Atlanta. (*Id.* at 6.) "On June 23, 2023, Plaintiff informed the healthcare providers at USP-Atlanta that he had continuing pain, and that he had never received the results from the December 2022 biopsy." (*Id.*) Plaintiff was informed of his biopsy results on June 26, 2023 and he saw an oncologist on June 26, 2023. (*Id.*) "On August 9, 2023, a positron emission tomography CT ("PET CT") of the whole body found, '1. Intensely hypermetabolic skin lesion within the left anterior chest wall, consistent with known primary malignancy. 2. Hypermetabolic bilateral axillary lymph nodes are concerning for nodal metastatic disease.'" (*Id.*) "On October 3, 2023, an ultrasound-guided fine needle aspiration ("FNA") of the left axillary lymph nodes revealed the presence of malignant cells, and Plaintiff was diagnosed with stage III metastatic malignant melanoma." (*Id.*) Plaintiff alleges that "Defendants were [aware] of these results." (*Id.*)

Plaintiff alleges that "Defendant NaphCare and its employees, agents and representatives were responsible for coordinating with FCI-Edgefield and USP-Atlanta for timely scheduling

3

specialized healthcare, including oncology and surgical consultations and treatment." (*Id*.) According to Plaintiff, Defendant NaphCare, the Federal Defendants, "John Doe, and Jane Doe failed to timely refer and/or schedule and/or arrange a consultation for Plaintiff with a surgical oncologist and failed to timely ensure oncology treatment." (*Id*.) Plaintiff alleges that "[b]ecause of Defendants' negligence, gross negligence, recklessness, carelessness, wantonness, and deviations from accepted medical standards, Plaintiff's skin lesion metastasized and subsequently spread and grew for a considerable period of time, thereby requiring different and more extensive treatment(s) and worsening his prognosis." (*Id*. at 7.)

Plaintiff filed this action on August 1, 2025, and he filed the instant Amended Complaint on October 2, 2025. (Dkt. No. 15.) The Amended Complaint alleges three causes of action: (1) Medical Malpractice against "all Defendants"; (2) Negligence, Gross Negligence, Recklessness against Defendant NaphCare; and (3) "U.S. Constitutional Violations" under 42 U.S.C. § 1983 against Defendant NaphCare, the Federal Defendants, "John Doe, Jane Doe, ABC Inc., and XYZ Corp." (*Id.* at 7–12.) The Amended Complaint also alleges an "Alternative" cause of action for Wrongful Death against "all Defendants." (*Id*. at 13.)

On October 14, 2025, Defendant NaphCare filed a Motion to Dismiss. (Dkt. No. 19.) Plaintiff filed a response in opposition on October 27, 2025 (Dkt. No. 20), to which NaphCare filed a reply on November 3, 2025 (Dkt. No. 21). On November 24, 2025, Defendant the United States filed a Motion to Substitute Party, seeking an Order substituting the United States as the defendant in place of named Defendants Young and Taiwo "for any tortious acts and omissions alleged to have been committed by Young and Tawio in the above-captioned case." (Dkt. No. 23). In support, the United States has provided a Certification of Scope of Employment Pursuant to 28 U.S.C. § 2679(d), certifying that Young and Tawio "were at all times relevant acting within the

scope of their employment as employees of the United States."[3] (Dkt. No. 23-1.) On November 24, 2024, the Federal Defendants filed a Motion to Dismiss, and they filed an Answer to the Amended Complaint that same day. (Dkt. Nos. 24; 25.) Plaintiff filed a response in opposition to the Motion to Dismiss on December 15, 2025 (Dkt. No. 28), to which the Federal Defendants filed a reply on December 17, 2025 (Dkt. No. 29).

In his response brief to the Federal Defendants' Motion to Dismiss, Plaintiff states that he "consents to the substitution [of] Defendant United States for Defendants Young and Taiwo as it relates to Plaintiff's state law tort claims only." (Dkt. No. 28 at n.1.) Accordingly, the undersigned recommends the Court grant the Motion to Substitute (Dkt. No. 23) and substitute the United States in place of Young and Taiwo as to the state law tort claims asserted against them. Having resolved this threshold matter, the undersigned turns to the pending motions to dismiss, which are ready for review.

## **STANDARD OF REVIEW**

Defendants move to dismiss Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(1) permits a pre-answer motion that raises a "defense to a claim for relief" for "lack of subject-matter jurisdiction[.]" "When the defendant contends that the complaint fails to allege facts sufficient to establish subject matter jurisdiction, 'all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.'"

---

[3] Under the FTCA, a federal employee is immune from personal liability suits if the claims arise "within the scope of their employment." *Doe v. Meron*, 929 F.3d 153, 160 (4th Cir. 2019); *see* 28 U.S.C. § 2679(a), (b) (stating that the FTCA does not authorize suits against federal agencies or employees); 28 U.S.C. § 1346(b)(1). The United States Attorney, acting on behalf of the Attorney General, must "certify" that the employee was acting in the scope of his or her employment. *Maron v. United States*, 126 F.3d 317, 321 (4th Cir. 1997). Unless the plaintiff challenges this certification, it is "conclusive." *Doe*, 929 F.3d at 160.

*Stogsdill v. Sebelius*, No. No. 3:12-cv-0007-TMC, 2013 WL 521483, at *2 (D.S.C. Feb. 11, 2013) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

On a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) . . . [a court] must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). For purposes of a motion to dismiss, the district court must "take all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"In considering a motion to dismiss, [the court] accept[s] the complainant's well-pleaded allegations as true and view[s] the complaint in the light most favorable to the non-moving party." *Stansbury v. McDonald's Corp.*, 36 Fed. App'x. 98, 98-99 (4th Cir. 2002) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In addition, the Court "may consider documents attached to the complaint, . . . , as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State For Defence v. Trimble Navigation Lt*d., 484 F.3d 700, 705 (4th Cir. 2007). While the court must draw all reasonable inferences in favor of the plaintiff, it need not accept the "legal conclusions drawn from the facts, . . . unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v.*

*Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Giarratano*, 521 F.3d at 298).

# DISCUSSION

### A.  NaphCare's Motion to Dismiss (Dkt. No. 19)

In its Motion to Dismiss, NaphCare argues: (1) Plaintiff has not and cannot plead a cause of action for medical malpractice against NaphCare; (2) Plaintiff's negligence claim against NaphCare is duplicative and should therefore be dismissed; (3) Plaintiff's medical malpractice and negligence claims rely upon the findings of the Compassionate Release Order and are therefore barred by the doctrine of judicial estoppel; (4) Plaintiff fails to state a claim against NaphCare for violations of § 1983; and (5) the Court lacks subject matter jurisdiction to hear Plaintiff's wrongful death claim and Plaintiff lacks standing to assert it. (Dkt. No. 19.) The undersigned considers these arguments below.

### 1.  Medical Malpractice and Negligence Claims

As noted above, Plaintiff alleges claims against NaphCare both for Medical Malpractice and Negligence, Gross Negligence, Recklessness. (Dkt. No. 15 at 7–10.) Under the Medical Malpractice claim, Plaintiff alleges "Plaintiff had a patient provider relationship with [NaphCare] and/or [NaphCare] owed Plaintiff a duty of care to timely schedule third party medical appointments." (*Id*. at 7.) Under the claim for Negligence, Gross Negligence, Recklessness, Plaintiff alleges "NaphCare owed Plaintiff a duty of care to timely refer, coordinate and schedule third party/outside medical appointments." (*Id*. at 9.) In his briefing, Plaintiff states that his case "rests on the failure to timely refer Mr. Potts to an outside dermatologist and oncologist and schedule appointments." (Dkt. No. 20 at 7.)

In its Motion to Dismiss, NaphCare argues that Plaintiff fails to plead the existence of a patient-physician relationship between himself and NaphCare, which is a prerequisite for a medical malpractice claim. (Dkt. No. 19 at 5–7.) NaphCare further asserts here that "Plaintiff does not specify who exactly employed by NaphCare allegedly was supposed to refer him and schedule appointments." (*Id*. at 5.) Additionally, NaphCare argues that "Plaintiff's medical malpractice and negligence claims arise from the same factual allegations, allege the same injury, and seek identical relief," such that "these claims are duplicative in nature and dismissal is appropriate." (*Id*. at 7–9.)

Under South Carolina law, a medical malpractice plaintiff must prove, by a preponderance of the evidence:

> (1) The presence of a doctor-patient relationship between the parties;
>
> (2) Recognized and generally accepted standards, practices and procedures which are exercised by competent physicians in the same branch of medicine under similar circumstances;
>
> (3) The medical or health professional's negligence, deviating from generally accepted standards, practices, and procedures;
>
> (4) Such negligence being the proximate cause of the plaintiff's injury; and
>
> (5) An injury to the plaintiff.

*Jamison v. Hilton*, 775 S.E.2d 58, 62 (S.C. Ct. App. 2015) (quoting *Brouwer v. Sisters of Charity Providence Hosps.*, 763 S.E.2d 200, 203 (S.C. 2014)).

Here, NaphCare argues that "referral discussions between medical providers, without more, are insufficient to establish a patient-physician relationship," citing *Fay v. Grand Strand Reg'l Med. Ctr., LLC*, 771 S.E.2d 639 (S.C. Ct. App. 2015) and *Roberts v. Hunter*, 426 S.E.2d 797 (S.C. 1993). (Dkt. No. 19 at 5–7.) Both *Fay* and *Roberts* considered whether the trial court erred in granting a directed verdict on a medical malpractice claim for lack of a doctor/patient relationship. In *Roberts*, the court described this relationship as "a consensual one wherein the

patient knowingly seeks the assistance of a physician and the physician knowingly accepts him as a patient." 426 S.E.2d at 799 (quoting 61 Am. Jur. 2d Physicians Surgeons § 158 at 290 (1981)). In *Fay*, the court noted, "[w]hether the law recognizes a particular duty is an issue of law to be determined by the court." 771 S.E.2d at 644 (quoting *Ellis ex rel. Ellis v. Niles*, 479 S.E.2d 47, 49 (S.C. 1996)). "Although the court must determine whether the law recognizes a duty, '[t]he existence of a physician-patient relationship is a question of fact for the jury.'" *Id.* (quoting *Fuller v. Blanchard*, 595 S.E.2d 831, 836 (S.C. Ct. App. 2004)).

While *Fay* and *Roberts* both found the lack of a doctor/patient relationship, they considered this issue based on the evidence presented at trial, rather than the allegations made in a pleading. Additionally, in both cases, the court emphasized that the defendants did not review the plaintiff's medical records. *Roberts*, 426 S.E.2d at 799 (finding that granting the directed verdict in favor of the doctor was proper when the doctor "neither examined [patient] nor reviewed his file"); *Faye*, 771 S.E.2d at 645 (finding that granting the directed verdict in favor of the doctor was proper when the doctor "never communicated with [patient], never attempted to treat [patient], and did not look at her records"). The undersigned does not find *Fay* and *Roberts* support dismissing Plaintiff's medical malpractice claim, where no discovery has been taken and Plaintiff alleges that NaphCare was "in possession" of Plaintiff's medical records indicting a need for outside follow-up and treatment. (Dkt. No. 15 at 5–6.) As for NaphCare's assertion that the Amended Complaint does not identify any specific NaphCare employee, Plaintiff asserts that such information will be discerned in the discovery process. (Dkt. No. 20 at 6.) Based on the foregoing, the undersigned recommends Plaintiff's medical malpractice claim against NaphCare should not be dismissed for failure to state a claim. *See Matkari*, 7 F.3d at 1134 ("In general, a motion to dismiss for failure to state a claim

9

should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief.").

As for NaphCare's argument that the medical malpractice and negligence claims are duplicative, "[t]hat contention does not acknowledge . . . the propriety of pleading multiple or alternative claims based on the same facts." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 696 (4th Cir. 2018) (referencing Federal Rule of Civil Procedure 8(d)(2) which states "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones"). While both claims arise out of the same factual allegations, the undersigned recommends Plaintiff's claim for Negligence, Gross Negligence, Recklessness should be permitted to proceed as an alternate theory of liability at this early stage of the litigation. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *see also Johnson v. Barner*, No. 3:19-cv-01129-JMC, 2020 WL 4499989, at *8 (D.S.C. Aug. 5, 2020) (finding "it appears that the fiduciary claim is duplicative of [plaintiffs'] negligence claim" and citing Rule 8 as a basis to reject dismissing the fiduciary claim as duplicative of the negligence cause of action).

### 2. Judicial Estoppel

NaphCare further argues that Plaintiff's claims for medical malpractice and negligence are barred by judicial estoppel because they rely upon the Compassionate Release Order issued by the United States District Court for the Middle District of North Carolina, which Plaintiff attached to the Amended Complaint (Dkt. No. 15-3). (Dkt. No. 19 at 9–10). The Compassionate Release Order, issued on August 22, 2024, granted Plaintiff compassionate release from federal custody based upon the BOP's failure to provide Plaintiff "proper and necessary medical care" and Plaintiff's "stage III melanoma diagnosis." (Dkt. No. 15-3 at 9–10.) The Compassionate Release

Order was issued in a criminal matter, and Plaintiff and the United States of America were the only parties.

Judicial estoppel "is an equitable doctrine, designed to 'protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Martineau v. Wier*, 934 F.3d 385, 393 (4th Cir. 2019) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)). Judicial estoppel is typically implemented when a party "has taken a later position that is 'clearly inconsistent' with [their] earlier one; has persuaded a court to adopt the earlier position, creating a perception that 'either the first or the second court was misled'; and would 'derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *Id.* (quoting *New Hampshire*, 532 U.S. at 750–51). However, judicial estoppel applies only when "'the party who is alleged to be estopped intentionally misled the court to gain unfair advantage,' and not when 'a party's prior position was based on inadvertence or mistake.'" *Id.* (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995)). Therefore, "'[w]ithout bad faith, there can be no judicial estoppel.'" *Id.* at 394 (quoting *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007)).

As noted by Plaintiff, a compassionate release under 18 U.S.C. § 3582(c)(1) is a discretionary determination made pursuant to an established sentencing criterion. (Dkt. No. 20 at 14.) As such, the North Carolina District Court's "task in reviewing Plaintiff's motion for compassionate release was limited to weighing sentencing considerations pursuant to an enumerated set of guidelines." (*Id.*) Notably, the Compassionate Release Order does not find the BOP is solely responsible for Plaintiff's injuries, and it does not indicate Plaintiff expressly made any such argument to that court. Upon careful review, the undersigned finds no evidence that Plaintiff has taken clearly inconsistent positions or that she has "intentionally misled the court to

gain unfair advantage." *Martineau*, 934 F.3d at 396–97. Accordingly, the undersigned recommends Plaintiff's claims for medical malpractice and negligence are not barred by judicial estoppel. *See Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996) ("Because of the harsh results attendant with precluding a party from asserting a position that would normally be available to the party, judicial estoppel must be applied with caution.").

### 3. Claim for Constitutional Violations

NaphCare next argues that Plaintiff fails to state a claim against it for violations of 42 U.S.C. § 1983. (Dkt. No. 19 at 10–16.) More specifically, NaphCare argues that Plaintiff has not alleged sufficient facts to: (1) "show that any NaphCare policy or custom deprived him of his constitutional rights" and (2) "show that any NaphCare employee and/or agent deprived him of his constitutional rights."[4] (*Id.*)

For the purposes of Section 1983, "a municipality is considered a 'person' and thus is subject to suit." *Hunter v. Town of Mocksville*, 897 F.3d 538, 553 (4th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). This theory of liability has been extended to include private entities operating under color of state law as well, meaning that the standards applicable to municipalities in the *Monell* context are equally applicable to private corporations acting under color of state law. *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727–28 (4th Cir. 1999); *see Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 355 (4th Cir. 2003). To that end, private entities acting under color of state law cannot be held liable under § 1983 solely because they employ a tortfeasor. *Monell*, 426 U.S. at 691; *see Austin*, 195 F.3d at 727 (noting that the

---

[4] Here, the undersigned recognizes that courts in this circuit have found that "§ 1983 does not provide a cause of action against a federal official or contractor." *Irving v. PAE Gov't Servs., Inc.*, 249 F. Supp. 3d 826, 835–36 (E.D. Va. 2017) (noting that "[b]ecause plaintiff's § 1983 claim is against a federal contractor who purportedly acted under color of federal law, this cause of action could be dismissed on this basis without further comment"). However, because NaphCare does not challenge Plaintiff's allegation that it was acting under state law in providing care to BOP inmates (*see* Dkt. Nos. 15 at 3; 20 at 9), the undersigned proceeds with an analysis of Plaintiff's claim against NaphCare for constitutional violations pursuant to § 1983.

Supreme Court has consistently refused to impose § 1983 liability "upon a theory of *respondeat superior*"). Rather, such entities are only subject to § 1983 liability when they cause a deprivation of federally conferred rights through an official "policy or custom." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).

> According to the Fourth Circuit, an official policy or custom can arise in four ways:
>
> (1) through an express policy, such as a written ordinance or regulation;(2) through the decisions of a person with final policymaking authority;(3) through an omission, such as a failure to properly train [or supervise] officers that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Blair v. Appomattox Cnty. Sch. Bd.*, 147 F.4th 484, 493 (4th Cir. 2025) (internal quotation marks omitted); *see also Connick v. Thompson*, 563 U.S. 51, 60–61 (2011).

Under the § 1983 claim against NaphCare, the Amended Complaint alleges "[t]he complained of actions by NaphCare were carried out pursuant to the official policies and customs of NaphCare, and/or were directly perpetuated by NaphCare policymakers." (*Id*. at 11.) Additionally, "NaphCare has adopted and perpetuated a corporate model that prioritizes cost savings and profit, and constitutes an official policy, practice, and custom." (*Id.*) The Amended Complaint alleges that "NaphCare has a long, documented history of civil rights and negligence suits against them, and has been named defendant in over 250 lawsuits arising from such claims." (*Id*. at 3.) The Amended Complaint further alleges that

> NaphCare maintains patterns, practices, policies, and/or customs including but not limited to the following particulars: (a) failing to timely schedule inmates for offsite medical care; (b) withholding, delaying, or failing to notify inmates of critical test results, depriving them of informed medical decision-making; (c) denying, delaying, or rationing medically necessary treatment in order to cut costs and maximize profit; (d) failing to ensure continuity of care and proper transfer of medical records.

(Dkt. No. 15 at 11.)

In its Motion to Dismiss, NaphCare cites these allegations and states they are deficient because "Plaintiff fails to specify whether NaphCare maintains written policies or procedures with these directives or identify the precise language of these directives (if such policies exist)." (Dkt. No. 19 at 12.) NaphCare further argues that Plaintiff "does not identify the persons with final policymaking authority or describe how these persons perpetuated the alleged unconstitutional actions, and does not allege numerous and specific instances of unconstitutional conduct so as to properly plead widespread practice or custom." (Dkt. No. 21 at 8.) Plaintiff asserts he has sufficiently pled a *Monell* § 1983 claim through the allegations in the Amended Complaint and states that, "[a]t this stage, Plaintiff is not privy to the facts necessary to more accurately describe or identify the specific customs or policies which caused the deprivation of Plaintiff's constitutional right." (Dkt. No. 20 at 10–11.)

Upon careful review, the undersigned finds that Plaintiff's conclusory allegations here do not satisfy federal pleading standards. The Amended Complaint's generalized allegation that Plaintiff's delays in obtaining referrals and necessary appointments resulted from a policy or custom promulgated by NaphCare to "cut costs and maximize profit" is unsupported by factual allegations from which such a policy and custom could be inferred. Plaintiff's reliance on his own encounters with NaphCare and his reference to "hundreds" of "civil rights and negligence suits" brought against NaphCare do not establish the existence of any widespread practice. The Amended Complaint does not specify whether the referenced lawsuits allege the same kind of misconduct of which Plaintiff complains here, and Plaintiff's experiences alone do not indicate a "persistent and widespread practice" of NaphCare failing to obtain timely referrals and schedule outside medical care. *Blair*, 147 F.4th at 493 (a municipal policy or custom may be established through, *inter alia*, "a practice that is so persistent and widespread as to constitute a custom or usage with the force of

law"); *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 403 (4th Cir. 2014) ("Sporadic or isolated violations of rights will not give rise to *Monell* liability; only 'widespread or flagrant' violations will.") (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987)). *Rodwell v. Wicomico Cnty., Maryland*, No. 22-cv-3014, 2024 WL 1178202, at *14 (D. Md. Mar. 19, 2024) ("Because the lawsuits Plaintiff relies upon do not allege the same kind of misconduct of which Plaintiff complains here, the three examples do not indicate a 'persistent and widespread practice' of failing to provide adequate medical care." (quoting *Owens*, 767 F.3d at 402)). And Plaintiff does not otherwise sufficiently allege the existence of an official policy sufficient to establish a § 1983 *Monell* claim.

As for Plaintiff's § 1983 deliberate indifference claim, Plaintiff appears to seek to hold NaphCare vicariously liable for its employees' alleged deliberate indifference, which he cannot do. *See Holtzclaw v. City of Greer*, No. 6:24-cv-4026-DCC-BM, 2024 WL 4608589, at *6 (D.S.C. Aug. 7, 2024) ("A local governmental entity—such as the City of Greer or Greenville County—cannot be held vicariously liable for the unconstitutional acts of its employees and is only liable under § 1983 if it causes a deprivation of constitutional rights through an official policy or custom."), *adopted by*, 2024 WL 4608025 (D.S.C. Oct. 29, 2024). Based on the foregoing, the undersigned recommends Plaintiff's § 1983 claims alleged against NaphCare be dismissed.

### 4.     Alternative Wrongful Death Claim

Finally, NaphCare moves to dismiss Plaintiff's wrongful death claim. As noted above, the Amended Complaint alleges an "Alternative" cause of action for Wrongful Death against "all Defendants," and includes the following footnote:

> Notably, Rules 8 and 18, Fed. Rules Civ. Pro., allow alternative requests for relief. Although Plaintiff is currently living, it is anticipated that he will die as a result of the cancer at issue in this case. Upon further information and belief, his death, more likely than not, will be a result of the Defendants' acts and omissions complained

> of and set forth herein. In the event that Plaintiff does not succumb to cancer during the pendency of this case, this alternative cause action will not be pursued. However, if such death does occur during the pendency of this lawsuit, this alternative cause of action for wrongful death, to be brought pursuant to S.C. Code § 15-51-10, et seq., should be deemed to apply. **In summary, this alternative action should be deemed to have been brought only in the event that Mr. Potts passes away during the pendency of this case.**

(Dkt. No. 15 at 13 (emphasis in original).)

Here, NaphCare argues that the Court lacks subject matter jurisdiction to hear Plaintiff's wrongful death claim and Plaintiff lacks standing to assert it. (Dkt. No. 19 at 17.) In response, Plaintiff asserts that he has pled this "alternative wrongful death claim to further preserve the rights of his statutory beneficiaries and avoid the need for future amendment of the pleadings in the event he dies during the pendency of this action." (Dkt. No. 20 at 16.)

Under South Carolina law, only the personal representative of a deceased person has standing to bring a wrongful death claim. *See* S.C. Code Ann. § 15-51-20 ("Every such action [for wrongful death] shall be brought by or in the name of the executor or administrator of [the person whose death shall have been so caused]."); *see also* S.C. Code Ann. § 62-3-703(a) ("A personal representative is a fiduciary who . . . has a duty to settle and distribute the estate of the decedent in accordance with the terms of a probated and effective will and this code, and as expeditiously and efficiently as is consistent with the best interests of the estate."). Because Plaintiff lacks standing to bring this wrongful death claim, the undersigned recommends it be dismissed. As NaphCare notes, the substitution of the personal representative as the proper party will be necessary in the event of Plaintiff's death pursuant to Rule 25 of the Federal Rules of Civil Procedure. Given that an amendment of the pleading would occur at that time regardless, Plaintiff's assertion of judicial efficiency is unfounded.

**B.     The Federal Defendants' Motion to Dismiss (Dkt. No. 24)**

In their Motion to Dismiss, the Federal Defendants move to dismiss in part Plaintiff's Amended Complaint. They argue: (1) the Court lacks subject matter jurisdiction over Plaintiff's claims against the individual Defendants in their official capacities; (2) the FTCA is the exclusive remedy for persons with claims for damages resulting from the negligent or wrongful acts of omissions of federal employees taken within the scope of their office or employment; (3) Defendant Taiwo was a United States Public Health Service employee and is entitled to absolute immunity; and (4) Plaintiff lacks standing to assert a claim for wrongful death. (Dkt. No. 24.)

In his response, Plaintiff consents to the dismissal of the state tort claims brought directly against Defendants Young and Taiwo and the constitutional claims against Taiwo in his individual capacity. (Dkt. No. 28 at 1–2.) Additionally, Plaintiff clarifies that he is not bringing official capacity claims against Defendants Young or Taiwo or constitutional claims against the United States. (*Id.* at 4–5.) While Plaintiff argues that his individual constitutional claims against Defendant Young should not be dismissed (Dkt. No. 28 at 5–6), the Federal Defendants note in their reply that they have not moved for the dismissal of the individual constitutional claims against Defendant Young and instead have answered the Amended Complaint regarding those claims (Dkt. No. 29 at 1.) Thus, the only issue remaining is whether Plaintiff's claim for wrongful death should be dismissed against the Federal Defendants. For the same reasons stated *supra* section A.4, the undersigned recommends the wrongful death claim be dismissed because Plaintiff lacks standing to bring this claim.

## **CONCLUSION**

Based on the foregoing, the undersigned RECOMMENDS that NaphCare's Motion to Dismiss (Dkt. No. 19) be GRANTED IN PART AND DENIED IN PART; the Federal Defendants' Motion to Dismiss (Dkt. No. 24) be GRANTED; and the United States' Motion to Substitute (Dkt.

No. 23) be GRANTED. In light of these recommendations, the only pending claims are: (1) Plaintiff's claims for medical malpractice and negligence, gross negligence, recklessness against Defendants NaphCare and the United States; and (2) Plaintiff's individual constitutional claims against Defendant Young.[5] Additionally, Plaintiff has asserted claims against Defendants John Doe, Jane Doe, ABC Inc. and XYZ Corp. for medical malpractice, and constitutional violations pursuant to § 1983.[6] (Dkt. No. 15 at 7–8; 10.) The undersigned has not considered those claims in this Report and Recommendation, as they are not squarely before the Court.[7] Plaintiff's remaining claims against Defendant NaphCare and the Federal Defendants should be dismissed, and Defendant Taiwo should be dismissed from this action.

    IT IS SO RECOMMENDED.

January 27, 2026

Charleston, South Carolina

                              MARY GORDON BAKER
                              UNITED STATES MAGISTRATE JUDGE

---

[5] In their briefings, the parties agree this claim arises pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Dkt. Nos. 24; 28.)

[6] While Plaintiff also brings a wrongful death claim against these unnamed Defendants, this claim should be dismissed because Plaintiff lacks standing to bring it, as discussed *supra* section A.4.

[7] Once Plaintiff identifies these unnamed Defendants, he will need to move to amend his Complaint to include the identified individuals for service of process. "[A] John Doe defendant must be identified by the time the issues are adjudicated on their merits." *Myers v. City of Charleston*, No. 2:19-cv-757, 2021 WL 925326, at *10 (S.D. W. Va. Mar. 10, 2021).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).